Eric BURCHETTE *v.* SEX OFFENDER SCREENING & RISK ASSESSMENT COMMITTEE

07-408                                                      288 S.W.3d 614

Supreme Court of Arkansas
Opinion delivered October 23, 2008

[Rehearing denied December 4, 2008.*]

*Jeff Rosenzweig*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Amy L. Ford*, Ass't Att'y Gen., for appellee.

---

* IMBER, J., not participating.

Robert L. Brown, Justice. The appellant, Eric Burchette, pled guilty to one count of sexual assault in the fourth degree and to two counts of sexual indecency with a child in the Benton County Circuit Court on November 9, 2004. Other allegations were made against Burchette, but he was not charged; nor did he plead guilty to those offenses. Following his guilty pleas, he was sentenced to six years in the Arkansas Department of Correction.[1] He now appeals his Level 3 community notification risk assessment on grounds that he did not receive a hearing before the Sex Offender Assessment Committee ("SOAC").

After Burchette was incarcerated in the state penitentiary following his guilty pleas, the Sex Offender Screening and Risk Assessment program ("SOSRA") of the Arkansas Department of Correction assessed Burchette pursuant to the Sex Offender Registration Act of 1997 ("the Act"). *See* Ark. Code Ann. §§ 12-12-901 to -920 (Repl. 2003 and Supp. 2007). As part of the assessment, on November 1, 2005, Burchette was interviewed by a SOSRA interviewer pursuant to regulations promulgated by SOAC. *See* 004-00-002 Ark. Code R. § 18 (Weil 2007). Based, in part, on that interview, SOSRA determined that Burchette's community notification risk assessment should be Level 3 and notified him of that decision in a letter dated December 13, 2005. Burchette administratively appealed the SOSRA assessment to SOAC. As part of his appeal, Burchette requested a hearing before the seven-person SOAC, which was denied.[2] Burchette also requested and received documents from SOSRA and provided additional information to SOAC for its review. After receiving the additional documentation, as well as the SOSRA file with Burchette's interview, SOAC upheld the Level 3 assessment.

Burchette next sought judicial review of SOAC's decision in the Pulaski County Circuit Court, which denied and dismissed his complaint. He appealed that decision to the court of appeals, and while the appeal was pending, this court decided *Munson v. Arkansas Department of Correction Sex Offender Screening & Risk Assessment*, which held that SOAC is required, under the Arkansas Administrative Procedure Act, to issue written findings of fact and

---

[1] Defense counsel now represents to this court that Burchette has been paroled.

[2] The regulatory procedure is for one member of the nine-person SOAC to review an assessment appeal and then advise the full committee if he or she determines the assessment level should be modified. *See* 004-00-002 Ark. Code R. § 30 (Weil 2007).

conclusions of law. 369 Ark. 290, 294, 253 S.W.3d 901, 904 (2007). Without such written findings, this court held that there was no final order for review. *Id.* As a result of *Munson*, Burchette's case was remanded to SOAC with directions for it to enter a final order. SOAC did so, and Burchette again filed for judicial review before the Pulaski County Circuit Court, which affirmed the Level 3 assessment on grounds that it was supported by substantial evidence and found Burchette's due-process arguments to be without merit. He now appeals the SOAC decision to this court.

Burchette's sole point on appeal is that he was entitled to a hearing before the nine-person SOAC before it could affirm the initial assessment that he was a Level 3 sex offender. He acknowledges this court's recent holding that an offender is not entitled to a hearing under the Act, codified at Arkansas Code Annotated sections 12-12-901 to -920. *Munson v. Ark. Dep't of Corr. Sex Offender Screening & Risk Assessment*, 369 Ark. 290, 253 S.W.3d 901 (2007). He argues, nevertheless, that constitutional due-process requirements demand that he receive a hearing.

In considering any constitutional challenge to a statute, this court begins with the axiom that every act carries a strong presumption of constitutionality. *See, e.g., Ark. Dep't of Corr. v. Bailey*, 368 Ark. 518, 523, 247 S.W.3d 851, 855 (2007). The party challenging the legislation bears the burden of proving its unconstitutionality, and any doubts about the statute will be resolved in favor of its constitutionality, if it is possible to do so. *Id.* Given this presumption, a statute is invalid only if it is in clear and unmistakable conflict with constitutional requirements. *Id.* at 524, 247 S.W.3d at 855.

According to the Act, persons convicted of certain enumerated offenses must register as sex offenders. Ark. Code Ann. § 12-12-905 (Supp. 2007). The Act also directed SOAC to promulgate regulations establishing guidelines and procedures for the disclosure of relevant and necessary information regarding sex offenders to the public. *Id.* § 12-12-913(c)(1)(A). These regulations must identify factors relevant to an offender's future dangerousness and likelihood of reoffense or threat to the community. *Id.* § 12-12-913(c)(2)(A). The regulations are required to set forth the extent of information to be made public, depending on the offender's level of dangerousness, pattern of offending behavior, and the extent to which the information will enhance public safety. *Id.* § 12-12-913(c)(2)(B). As part of this process, the Act further requires that SOAC conduct an individual assessment of each offender's risk to the public. *Id.* § 12-12-917(b).

Under the regulations promulgated by SOAC, SOSRA examiners perform the initial risk assessment, as was done with Burchette. 004-00-002 Ark. Code R. § 11 (Weil 2007). They are required to consider, but are not limited to, the following information: (1) the offender's criminal history; (2) the interview with the offender conducted by a SOSRA staff member; (3) a polygraph examination or Voice Stress Analysis, if SOSRA believes they otherwise lack adequate information to assess the offender; (4) a review of any available, relevant mental health records; (5) psychological testing; (6) actuarial instruments designed to assess individuals convicted of sexual offenses; and (7) other information relevant to the offender's offense history and/or pattern. *Id.* § 12. Based on this assessment, an examiner determines the appropriate level of risk.[3] *Id.* §§ 14-15. The assessed level of risk determines the amount of information about the offender that is made available to the public. *Id.* § 24.

An offender can challenge his initial assessed risk level as determined by the SOSRA examiner by submitting a written request for administrative review to SOAC. Ark. Code Ann. § 12-12-922(b)(1)(A) (Supp. 2007). The offender may also request copies of all documents generated by the examiner, a listing by document name and source of all documents that may be available from other agencies having custody of those documents, and a copy of the tape of the interview. *Id.* § 12-12-922(b)(1)(B). Upon request for administrative review, a member of SOAC must conduct the review and respond to the offender within thirty days. *Id.* § 12-12-922(b)(6)(A). The SOAC reviewer can recommend to the full SOAC to set aside the risk level assigned by SOSRA if: (1) it is not supported by substantial evidence, (2) the rules and procedures were not properly followed, or (3) there is new information bearing on the offender's risk to the community. *Id.* § 12-12-922(b)(3)(B). A vote by the full SOAC is required to change the initial assessment by SOSRA. 004-00-002 Ark. Code R. § 30 (Weil 2007). Following the administrative review by SOAC, an offender may petition for judicial review pursuant to

---

[3] Sentencing courts generally do not have the authority to categorize an offender as a Level 4 sexually violent predator. *See* Ark. Code Ann. § 12-12-918 (Supp. 2007). However, if information not available to the court at the time of trial emerges in the course of a sex offender evaluation, a SOSRA examiner can recommend to SOAC that an offender be designated as a Level 4 sexually violent predator. *Id.* § 12-12-922(a).

the Arkansas Administrative Procedure Act. Ark. Code Ann. § 12-12-922(b)(7)(A)(ii) (Supp. 2007).

Burchette first urges that the Act does not satisfy procedural due-process requirements under either the Arkansas or United States Constitutions because he was not allowed a hearing before SOAC. He cites this court to *Connecticut Department of Public Safety v. Doe* in support of his contention. 538 U.S. 1 (2003). In *Doe*, the United States Supreme Court held that the appellant was not entitled to a hearing on his current level of dangerousness before being placed on Connecticut's sex offender registry. *Id.* at 3. The Connecticut statute mandated that all convicted sex offenders be listed on the registry. *Id.* The Court noted that current dangerousness was not a factor in placing offenders on the Connecticut list, and that state officials made no determination regarding a convicted offender's level of risk to the community. *Id.* In fact, the Connecticut registry included a disclaimer that there had been no "determination that any individual included in the registry is currently dangerous. Individuals included within the registry are included solely by virtue of their conviction record and state law." *Id.* at 5. Therefore, the Court held that the offender was not entitled to a hearing because due process "does not require the opportunity to prove a fact that is not material to the State's statutory scheme." *Id.* at 3.

According to Burchette, *Doe* mandates that he receive a hearing because, unlike Connecticut, an offender's assessment under Arkansas's statutory scheme depends on factual determinations and assessments made by the State regarding current dangerousness and the likelihood of reoffense. He specifically relies on the Court's statement in *Doe* that "[p]laintiffs who assert a right to a hearing under the Due Process Clause must show that the facts they seek to establish in that hearing are relevant under the statutory scheme." *Id.* at 8. He interprets that passage to mean that when an offender seeks to dispute relevant facts regarding dangerousness and reoffense, he is automatically entitled to a hearing before SOAC.

In the instant case, Burchette specifically asserts that the SOSRA examiner and SOAC relied on allegations of conduct for which he was never charged or convicted in assessing him a Level 3 offender. He argues that his risk assessment level was artificially high because SOAC considered these untrue allegations of violent conduct. Accordingly, Burchette maintains that a hearing before SOAC was essential in order for him to dispute those allegations.

We turn then to the issue of procedural due process. Procedural due-process rights exist primarily to ensure that a state proceeding, resulting in a deprivation of liberty or property, is fair. *See Bailey*, 368 Ark. at 524, 247 S.W.3d at 855-56. This court has set out the requirements of due process:

> The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner. The extent to which procedural due process must be afforded the recipient is influenced by the extent to which he may be condemned to suffer great loss. It depends upon whether the interest in avoiding that loss outweighs the government interest in summary adjudication. Thus, determining what process is due involves the consideration of three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that additional or substitute procedural requirements would entail.

*State of Wash. v. Thompson*, 339 Ark. 417, 425-26, 6 S.W.3d 82, 87 (1999) (internal citations omitted).

In *Arkansas Department of Correction v. Bailey, supra*, the offender appealed his Level 3 sex offender assessment on grounds that it resulted from conduct for which he had not been convicted and was based on facts he did not have an opportunity to fully contest. 368 Ark. at 522, 247 S.W.3d at 854. Bailey argued specifically that the Level 3 assessment was unconstitutional because he was adjudicated not guilty by reason of mental disease or defect and, therefore, never had his day in court on the charged sexual conduct. *Id.* at 521, 247 S.W.3d at 854. This court, however, held that Bailey's due-process rights were satisfied because he had availed himself of the statutory provisions of Arkansas Code Annotated section 5-2-313, governing acquittals based on a mental health report. *Id.* at 528, 247 S.W.3d at 858. We further concluded that Bailey was not denied sufficient procedural due-process rights because he conceded that he had engaged in the charged conduct when he entered a plea of not guilty by reason of mental disease or defect. *Id.* at 527, 247 S.W.3d at 858.

This court went on in *Bailey* to consider the general constitutionality of the Act by discussing, in depth, a decision of the

Eighth Circuit Court of Appeals, *Weems v. Little Rock Police Department*, 453 F.3d 1010 (8th Cir. 2006). In *Weems*, two defendants appealed their placement on the Arkansas Sex Offender Registry and contended that the Act was unconstitutional. *Id.* The court affirmed the district court's grant of a motion to dismiss for failure to state a claim, holding that the Act was consistent with procedural due-process requirements. *Id.* at 1019-20. In doing so, the *Weems* court laid out a comprehensive overview of the procedural protections provided by the Act. *Id.* at 1012-13. The court also restated the district court's finding that the *"Due Process Clause* does not require the State to extend the rights to counsel and to confront witnesses to the risk assessment process." *Id.* at 1014. In finding the procedures constitutional, the court noted specifically:

> Before a team operating under the oversight of the Sex Offender Assessment Committee may assign a risk level to an offender, the team conducts a thorough review of official records and historical data, performs psychological testing and evaluation, undertakes actuarial analyses, and conducts a personal interview with the offender. *The offender has an opportunity to be heard through the interview,* and may access most records and information maintained by the committee.

*Id.* at 1018 (emphasis added).

We reiterate that Burchette's sole point on appeal is that he was entitled to a hearing before the nine-person SOAC. As an initial matter, it is difficult for this court to know with certainty what Burchette means by a "hearing." Based on his briefs and oral argument before this court, it appears he is not requesting a right to counsel, that witnesses be present, to cross-examination, or even that his testimony be under oath. Rather, it appears he wants to give his unsworn version of events, relating to the accusations for which he did not plead and was not charged, in person to SOAC so that SOAC can assess his credibility face-to-face. Of course, his version of events was previously given to the SOSRA interviewer in a face-to-face meeting. But Burchette maintains that SOAC is the ultimate fact-finder, if there is an appeal of the SOSRA decision, and that body should be required to weigh his credibility. We note on this point that when there is no appeal to SOAC, SOSRA is the ultimate fact-finder.

In short, Burchette contends that he could not protect his rights merely by presenting written statements to SOAC.

Instead, he urges that due process requires that he be allowed to personally appear before SOAC, answer their questions, and "plead to be believed." And yet, as was underscored by the court in *Weems*, in the instant case, Burchette had an in-person opportunity to give his version of the events during his SOSRA interview. In fact, the SOSRA Assessment Summary prepared after Burchette's November 1, 2005 interview includes a portion titled "Offender Version." The interviewer included a handwritten report of Burchette's assertions that he did not engage in the conduct initially alleged but for which he was not charged. Hence, despite his disagreement with his risk assessment, it is clear from the record that Burchette had a meaningful opportunity to be heard on the matter in his interview. Moreover, the Act gave Burchette an opportunity to appeal the SOSRA staff's Level 3 assessment to SOAC and, following that, to the Pulaski County Circuit Court as part of judicial review.

We hold that Burchette had a meaningful opportunity to be heard under the facts of this case because of the procedure, which included the face-to-face SOSRA interview and the SOAC review. Burchette's procedural due-process rights under either the Arkansas or United States Constitutions were not violated by denying him a second face-to-face interview before SOAC.

Affirmed.

IMBER, J., not participating.