Cite as 2020 Ark. App. 261

# ARKANSAS COURT OF APPEALS

DIVISION I
**No.** CV-19-674

|  |  |
|---|---|
| STEVEN D. MITCHELL<br>APPELLANT<br><br>V.<br><br>SEX OFFENDER ASSESSMENT<br>COMMITTEE, STATE OF ARKANSAS<br>APPELLEE | **Opinion Delivered** April 22, 2020<br><br>APPEAL FROM THE IZARD COUNTY<br>CIRCUIT COURT<br>[NO. 33CV-18-149]<br><br>HONORABLE HOLLY MEYER,<br>JUDGE<br><br>AFFIRMED |

## LARRY D. VAUGHT, Judge

Appellant Steven Mitchell is a registered sex offender who petitioned the Sex Offender Community Notification Assessment (SOCNA) for reassessment. The SOCNA reassessed Mitchell as a Level 3 sex offender, and the Sex offender Assessment Committee (SOAC) affirmed that decision. Mitchell appealed to the Izard County Circuit Court, which affirmed. Mitchell now appeals to this court, and we also affirm.

Mitchell was a teacher at Melbourne High School. In 2005, he entered a negotiated guilty plea to two counts of sexual assault in the second degree. Multiple charges were dismissed as part of the negotiated plea. Mitchell was sentenced to probation and required to register as a sex offender. The SOCNA designated Mitchell as a Level 3 sex offender.

Mitchell was charged with, and acquitted in federal court of, taking minors across state lines for the purposes of sex. Mitchell was discharged from probation in 2010. As part of his

probation, he had completed sex-offender therapy with Dr. Ralph Hyman, and after being discharged from probation he voluntarily continued therapy for seven years.

In 2017, Mitchell requested reassessment. He was assigned an actuarial assessment baseline of Level 1 by both the VASOR and Static-99 actuarial assessments. Mitchell participated in a two-hour SOCNA interview and submitted to a polygraph that indicated "no deception detected."

During this reassessment, DHS discovered that Mitchell had never been notified of its 2004 true finding regarding abuse allegations against him. DHS notified him, and Mitchell appealed the finding. Mitchell's appeal was successful, causing the true finding to be reversed and his name removed from the Child Maltreatment Central Registry.

On January 11, 2018, the SOCNA determined that Mitchell should again be classified as a Level 3 sex offender. Mitchell appealed to the SOAC on January 19. On January 25, the SOAC sent Mitchell a letter stating that "because of unforeseen circumstances, the time frame for the review will take longer than the typical (30) day response. The reason for delay is not related to your case."

As the delay dragged on, Mitchell submitted additional documents to the SOAC regarding his appeal of the DHS true finding. He ultimately amended his appeal ten times. On November 27, after receiving no further communication from the SOAC, Mitchell filed a petition in the Izard County Circuit Court seeking a writ of mandamus. The SOAC then completed the administrative review of Mitchell's appeal on December 14. Members of the SOCNA staff attended a closed executive session of the SOAC on that date, during which the SOAC voted to uphold the SOCNA assessment level. Mitchell was not present at the closed session.

Mitchell then filed a timely appeal to the circuit court pursuant to the Arkansas Administrative Procedure Act (APA). After hearing oral argument and receiving posthearing

2

materials, the circuit court issued a final order on July 30, 2019, in which it found that SOAC had not complied with the statutory time allowed for completing a reassessment but affirmed the SOAC decision despite the delay. This appeal follows.

Mitchell's appeal is made pursuant to, and governed by, provisions of the APA, Arkansas Code Annotated sections 25-15-101 et seq., and the Sex Offender Registration Act, Arkansas Code Annotated section 12-12-901 (Supp. 2019). The APA provides that an agency decision may be reversed or modified if the substantial rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions, or decisions are (1) in violation of constitutional or statutory provisions; (2) in excess of the agency's statutory authority; (3) made upon unlawful procedure; or (4) affected by other error of law. Ark. Code Ann. § 25-15-212(h) (Supp. 2019). The appellate court's review is directed not toward the circuit court but toward the decision of the agency. *State Sex Offender Assessment Comm. v. Wallace*, 2013 Ark. App. 654.

Under the APA, the circuit court may reverse or modify an agency decision if it prejudices the rights of the petitioner because the administrative findings, inferences, or decision are not supported by substantial evidence. *Brown v. Sex Offender Assessment Comm.*, 2014 Ark. App. 236, at 2–3. It is not the role of either the circuit courts or the appellate courts to conduct a de novo review of the record; rather, the review is limited to ascertaining whether there is substantial evidence to support the agency's decision or whether the agency's decision runs afoul of one of the other criteria set out in section 25-15-212. *Id.* It is Mitchell's burden to prove an absence of substantial evidence, which is given the strongest probative force in favor of the agency's ruling. *Sex Offender Assessment Comm. v. Cochran*, 2019 Ark. App. 396, at 7, 587 S.W.3d 562, 566. The question is not whether the testimony would have supported a contrary finding but whether it

would support the finding made. *Id.* Questions of law are reviewed de novo. *Miracle Kids Success Acad., Inc. v. Maurras*, 2019 Ark. 146, 573 S.W.3d 533.

Before addressing the merits of Mitchell's arguments, we must first determine whether we have jurisdiction to hear his appeal. Although this is not raised by any party, jurisdiction is a question the court can address at any time. *Skelton v. City of Atkins*, 317 Ark. 28, 875 S.W.2d 504 (1994). In fact, it is not only the right but the duty of the court to determine whether there is jurisdiction of the subject matter. *Id.* While neither party argues that this court lacks jurisdiction, the State argues that Mitchell's sex-offender reassessment is not a "case of adjudication," and therefore some of the APA's statutory requirements do not apply. This argument raises jurisdictional concerns because the circuit court's jurisdiction to hear Mitchell's case, and therefore our jurisdiction to hear this appeal, are pursuant to the APA, specifically Arkansas Code Annotated section 25-15-212, which applies exclusively to "cases of adjudication."

The pertinent provision of the Sex Offender Registration Act, Arkansas Code Annotated section 12-12-922, which specifically governs sex-offender reassessment, states that, "[u]pon receipt of the findings, the sex offender has thirty (30) days to file a petition under the Arkansas Administrative Procedure Act, § 25-15-201 et seq., for judicial review in the Pulaski County Circuit Court or in the circuit court of the county where the sex offender resides or does business." The part of the APA that creates subject-matter jurisdiction for circuit court review of agency decisions, Arkansas Code Annotated section 25-15-212, states that it applies to "cases of adjudication." An adjudication is defined as "an agency process for the formulation of an order." Ark. Code Ann. § 25-15-202. An order is "the final disposition of an agency in any matter other than rule making, including

licensing and rate making, in which the agency is required by law to make its determination after notice and hearing." Ark. Code Ann. § 25-15-202. The State is arguing in this case that because Mitchell had no right to a hearing before the SOAC, its decision was not actually an "order," and therefore its proceeding was not an "adjudication."

In order to determine whether we have jurisdiction to hear this appeal, we must determine whether the sex-offender reassessment process is an adjudication. In *Fatpipe Inc. v. State*, the Arkansas Supreme Court dismissed an appeal for lack of jurisdiction because the agency decision being appealed was not an "adjudication," explaining that

> [t]he right to judicial review under the APA is limited to "cases of adjudication." Ark. Code Ann. § 25-15-212(a) (Repl. 2002). "Adjudication" is defined within the APA as the "agency process for the formulation of an order." Ark. Code Ann. § 25-15-202(1) (Repl. 2002). "Order" is defined as "the final disposition of an agency in any matter other than rule making, including licensing and rate making, in which the agency is required by law to make its determination after notice and a hearing." Ark. Code Ann. § 25-15-202(5). Where there has been no adjudication before the administrative agency, there has been no final agency action to be reviewed pursuant to section 25-15-212. *Walker v. Ark. State Bd. of Educ.*, 2010 Ark. 277, 365 S.W.3d 899. This court has held that it is only with respect to its judicial functions, which are basically adjudicatory or quasi-judicial in nature, that the APA purports to subject agency decisions to judicial review. *Tripcony v. Ark. Sch. for the Deaf*, 2012 Ark. 188, 403 S.W.3d 559; [*Ark. Livestock & Poultry Comm'n v.*] *House*, [276 Ark. 326, 329, 634 S.W.2d 388, 389 (1982)]. Otherwise, courts lack subject-matter jurisdiction to examine administrative decisions of state agencies. *Tripcony*, *supra*.

*Fatpipe, Inc. v. State*, 2012 Ark. 248, at 6–7, 410 S.W.3d 574, 578. The Arkansas Supreme Court determined that the agency decision in *Fatpipe* was not an adjudication because it was not judicial or quasi-judicial in nature.

We hold that the sex-offender-reassessment process at issue in this appeal is an adjudication pursuant to the APA notwithstanding the lack of a hearing. It was clearly the legislature's intent to provide offenders an avenue for judicial review of the SOAC's reassessment decisions, as evidenced by the plain language of the Sex Offender Registration Act. Moreover, in *Weems v. Little Rock Police Department*, 453 F.3d 1010 (8th Cir. 2006), a federal appellate court held

5

that a sex offender's federal procedural due-process rights were not violated by his lack of a right to a hearing in the reassessment process, in part because judicial review of these decisions is available, indicating that the Eighth Circuit assumed that the reassessment was an adjudication over which circuit courts have subject-matter jurisdiction.

Finally, pursuant to the supreme court's analysis in *Fatpipe*, we conclude that the sex-offender-reassessment process is judicial or quasi-judicial in nature. The Arkansas Supreme Court has repeatedly held that it is only with respect to its judicial functions, which are basically adjudicatory or quasi-judicial in nature, that the APA purports to subject agency decisions to judicial review. *Tripcony v. Ark. Sch. for the Deaf*, 2012 Ark. 188, at 7, 403 S.W.3d 559, 562 (citing *Ark. Livestock & Poultry Comm'n v. House*, 276 Ark. 326, 329, 634 S.W.2d 388, 389 (1982)). Here, we hold that the sex-offender-reassessment process is quasi-judicial in nature because it requires the SOCNA, and later the SOAC, to review existing or past facts specific to each case and then use current Arkansas law to determine the appropriate risk-assessment level for each offender. Therefore, because the Sex Offender Registration Act clearly intended to allow for judicial review of these decisions and the reassessment process is quasi-judicial in nature, the APA grants subject-matter jurisdiction for this appeal.

We now turn to the merits of Mitchell's arguments. All parties agree that the SOAC failed to comply with Arkansas Code Annotated section 12-12-922(b)(6)(A)–(B), which states that "[a] member of the committee shall conduct the review and respond within thirty (30) days of receiving a request for an administrative review" and "[i]f additional time is needed to obtain facts, the committee shall notify the sex offender requesting the review." Here, the SOAC received Mitchell's request for administrative review on January

13, 2018. It was not completed until December 14, 2018—337 days later. While the SOAC attempts to argue in its appellee's brief that the delay was caused by Mitchell's amendments and was necessary so that the committee could "obtain facts" by reviewing those amendments, that argument is not persuasive. First, when the SOAC notified Mitchell of the delay, it specifically said that the cause was not related to his case. Second, the SOAC admitted to the circuit court that the delay was caused by a staffing issue. It is therefore clear that the delay was not anticipated or authorized by statute governing the timeline by which such reviews are to be conducted.

We must, therefore, determine whether the SOAC's noncompliance with the statutory deadline warrants reversal. Because this is an appeal pursuant to the APA, in order to obtain relief, Mitchell must prove that his substantial rights were violated by the SOAC's failure to comply with the statute. *Reed v. Arvis Harper Bail Bonds, Inc.*, 2010 Ark. 338, at 5, 368 S.W.3d 69, 73 (citing Ark. Code Ann. § 25-15-212(h)). The SOAC argues that Mitchell cannot prevail because there is no evidence that, but for the delay, the outcome of the review would have been different. It argues that Mitchell actually benefited from the delay because he was able to submit additional documents as the case remained open. While we agree, we note that the timeliness of these reassessment decisions seems to have its own value, and the legislature was likely aware that sex-offenders need certainty regarding their risk-assessment levels when they are seeking a job or looking for housing. We note that in this case, Mitchell has not argued that he was prejudiced by the delay in any way other than that the final decision to reassign him to Level 3 was not his desired outcome. Moreover, Mitchell had an available statutory remedy for the delay—a petition for a writ of mandamus—which he could have chosen to utilize sooner. Arkansas Code Annotated section 25-15-214 states:

> In any case of rule making or adjudication, if an agency shall unlawfully, unreasonably, or capriciously fail, refuse, or delay to act, any person who considers himself or herself

injured . . . by the failure, refusal, or delay, may bring suit in the circuit court of any county in which he or she resides or does business, or in Pulaski County Circuit Court, for an order commanding the agency to act.

Therefore, because Mitchell cannot demonstrate that the delay prejudiced his substantial rights, we affirm on this point.

Mitchell next argues that the SOAC violated Arkansas Code Annotated section 25-15-209 by allowing members of the SOCNA staff to be present in the closed-door executive session at which Mitchell was not present and at which the SOAC decided the outcome of his appeal. Section 25-15-209 states:

(a) Unless required for the disposition of ex parte matters authorized by law, members or employees of an agency assigned to render a decision or to make final or proposed findings of fact or conclusions of law in any case of adjudication shall not communicate, directly or indirectly, in connection with any issue of fact with any person or party nor, in connection with any issue of law, with any party or his or her representative, except upon notice and opportunity for all parties to participate.

(b) An agency member may:
(1) Communicate with other members of the agency; and
(2) Have the aid and advice of one (1) or more personal assistants.

Mitchell argues that the SOAC and the SOCNA are separate entities, that the SOCNA was a party in this appeal and was adverse to Mitchell, and that the SOCNA was wrongfully permitted to attend the executive session while he was not present. The SOAC argues that Arkansas FOIA law gives it discretion to decide who may attend closed-door meetings and that the statutes governing sex-offender reevaluations require all meetings to be public except those in which the committee is discussing an individual case. Neither of these arguments address Mitchell's point, which is that 25-15-209 requires both parties to have the same opportunities to communicate with, and attend meetings of, the agency.

The state also argues that section 25-15-209 is inapplicable because the SOAC's review of the SOCNA's reassessment decision is not an "adjudication" under the APA, and section 25-15-

8

209 only applies to adjudications. We have addressed this issue in determining our subject-matter jurisdiction to hear this appeal, above, and we hold that sex-offender-reassessment proceedings are adjudications under the APA. That means that the statutory prohibition on ex-parte communication applies.

The SOAC argues that it and the SOCNA are not distinct and separate entities but are instead one organization. It claims that the SOCNA is essentially the staff for the SOAC. In *Sex Offender Assessment Committee v. Cochran*, 2019 Ark. App. 396, we held that the SOCNA and the SOAC are effectively the same party/entity based on organization, behavior, etc. While *Cochran* dealt with a very different underlying issue, it directly addressed the question of whether the SOAC and the SOCNA are separate entities. In *Cochran*, we held:

> The Committee characterizes itself and SOCNA as two separate parties and entities. We disagree. Both are a division of the Arkansas Department of Correction; both share the same P.O. Box for service of process; both were represented before the circuit court by the Arkansas Attorney General's Office; and they each responded identically to the "Petition for Judicial Review." Additionally, the letter stating that the Committee had received notice of an administrative review was written on SOCNA letterhead, even though the request itself was addressed to the Committee. Lastly, the record before us does not contain any evidence explaining who the executive secretary of the Committee is and who should have been served per Arkansas Code Annotated section 12-12-922(b)(8)(A)(i). The Committee was not prejudiced and had notice of this action as evidenced by the fact that it submitted its findings and record to the circuit court; despite this, the Committee failed to raise this issue until well into the proceedings. In light of the foregoing analysis, we conclude that the circuit court did not err by denying the Committee's request for dismissal and allowing Cochran to amend his petition for judicial review to designate the Committee rather than SOCNA as the respondent.

*Cochran*, 2019 Ark. App. 396, at 5–6, 587 S.W.3d at 565. Because the statute at issue specifically anticipates that the SOAC members may be aided in executive session by one or more personal assistants and because this court has already recognized that the SOCNA and the SOAC are virtually indistinguishable, we see no legal basis to reverse Mitchell's Level 3 assignment simply because SOCNA members were present at the meeting. We affirm on this point.

9

Mitchell's third point on appeal argues that the SOAC's decision failed to comply with applicable law because he was reassigned Level 3 despite evidence that he claims mandated a lower assignment. Mitchell argues that the SOAC impermissibly deviated from the actuarial model recommendations that he be assigned Level 1 and that it did so without providing a written justification for this deviation. He relies on *Weems*, *supra*, for the proposition? that departures from actuarial assessments should be "fully documented" and "used sparingly." In response, the SOAC points out that the Eighth Circuit in *Weems* held no such thing—it merely described what it understood the procedure to be at the time. The SOAC also notes that *Weems* was decided when the SOAC's guidelines were different than those currently in place. The guidelines now in effect state that "[t]he actuarial instruments are only one component of the assessment process and are considered in conjunction with other relevant information to determine the appropriate level of community notification." Ark. Admin. Code 004.00.3-17 (Westlaw AR ADC). They do not require written justification for a decision that deviates from actuarial recommendations.

More generally, Mitchell argues that the SOAC relied on unproven allegations that had already been considered in reaching the actuarial assessments, essentially penalizing him twice for the same alleged conduct. He also notes that the SOAC had reassessed him multiple times in the past as Level 3, which he claims indicates that rather than conducting a true reassessment, the SOAC is simply rubber-stamping its previous determinations. Finally, he argues that the SOAC failed to properly consider factors like his voluntary completion of years of sex-offender therapy beyond what was required during his probation.

Ultimately, all these arguments amount to a claim that the SOAC's decision to reassign him Level 3 was arbitrary and capricious under the APA. To set aside the SOAC's action as arbitrary and capricious, Mitchell must prove that the reassessment decision was a willful and unreasoning action, made without consideration, and with a disregard of the facts or circumstances of the case. *Beverly Enters.-Ark., Inc. v. Ark. Health Servs. Comm'n*, 308 Ark. 221, 230, 824 S.W.2d 363 (1992). Mitchell cannot prevail under that standard. The SOAC laid out ample reasoning for its decision. Beyond just reciting the numerous and serious allegations against him, the SOAC noted that it was troubled by Mitchell's inability or unwillingness to discuss how he had changed as a result of therapy. The SOAC also indicated that it was concerned by his continued refusal to admit that he has a problem and his lack of any plan to prevent a relapse. Given this evidence, we cannot say that the SOAC's determination was unreasoning or made without consideration. We affirm on this point.

Mitchell's final argument asserts that his reassessment violated his constitutional due-process rights under the Fourteenth Amendment. Here, he reframes his previous arguments about delay and ex parte communication as due-process violations rather than arguing them as statutory grounds for reversal under the APA. Although he cites no authority for this point, we will assume for the sake of argument (as the Eighth Circuit did in *Weems*) that sex offenders have a constitutionally protected liberty interest in "avoiding risk assessment and its consequences," thereby implicating the Due Process Clause. The question is whether Mitchell received adequate process to protect that interest.

In *Weems*, the Eighth Circuit found Arkansas's procedures adequate after considering "the risk of erroneous determinations under current procedures and the probable value of any additional safeguards, and the State's interest in risk assessment and community notification,

11

including the fiscal and administrative burdens of additional procedures." *Weems*, 453 F.3d at 1018. While the State's established procedures may be constitutionally sufficient, Mitchell's argument is that the State deviated from and violated those designated procedures in his case, thereby violating his due-process rights. However, it is well established that an appellant cannot succeed on a procedural due-process claim if state law provides a meaningful postdeprivation remedy for the alleged loss. *Hudson v. Palmer*, 468 U.S. 517 (1984). In *Weems*, the Eighth Circuit relied heavily on the availability of judicial review as a safeguard to protect the liberty interest of sex offenders aggrieved by their risk assessment, and in this case, we have rigorously addressed the merits of each of Mitchell's alleged violations. In addition to this appeal, Mitchell also had the statutory remedy of filing a petition for writ of mandamus to address the SOAC's delay, which he did.

In *Burchette v. Sex Offender Screening and Risk Assessment Committee*, 374 Ark. 467, 288 S.W.3d 614 (2008), the Arkansas Supreme Court rejected an argument similar to Mitchell's claim that he had not had an adequate opportunity to make his case to the SOAC. The supreme court held that sex offenders have a meaningful opportunity to be heard during their assessment interview and that they have the ability to appeal their assessment to the SOAC, then the circuit court, then the appellate court. In addition to those opportunities to be heard that were found to be sufficient in *Burchette*, Mitchell was also able to submit multiple documents for the SOAC to consider. He amended his petition multiple times, which is not authorized by statute but was allowed by the SOAC, thereby allowing Mitchell to make his case that his risk-assessment level should be reduced. As such, we find no violation of Mitchell's due-process rights. He was provided notice and a reasonable

opportunity to be heard, along with the opportunity to seek judicial review of the SOAC's decision.

Because Mitchell has not demonstrated a basis for reversal of his sex-offender reassessment pursuant to either the APA or the Due Process Clause, we affirm.

Affirmed.

VIRDEN and HARRISON, JJ., agree.

*Steven D. Mitchell*, pro se appellant.

*Leslie Rutledge*, Att'y Gen., by: *Nga Mahfouz*, Sr. Ass't Att'y Gen., for appellee.