RAYMOND R. ABRAMSON, Judge
On July 28, 2014, the Board of Trustees (Board of Trustees) of the Arkansas Public Employees Retirement System (APERS) issued findings of fact and conclusions of law finding that the appellees, all former employees of county-owned nursing homes, were not eligible for membership in APERS. The Board of Trustees determined that the appellees were not "county employees" eligible for APERS benefits because they were paid from revenues generated by the patients of the nursing homes, rather than from appropriations made by the quorum courts of each county. The appellees successfully appealed the Board of Trustees' decision to the Pulaski County Circuit Court, which entered *488 an order and judgment reversing the administrative decision on June 27, 2017. The Board of Trustees now appeals the circuit court's decision. Because we hold that substantial evidence supports the Board of Trustees' finding that the appellees were not "county employees" as the General Assembly has defined that term in the APERS code, we reverse the circuit court's judgment and dismiss the case.
I. Background
The appellees are former employees of nursing homes located in Craighead, Lawrence, and Union Counties. Appellee Martha Ella Garrison was employed by Craighead County Nursing Center from 1981 until 2003. Appellee Shawn Marie Hall was an employee at Lawrence Hall Nursing Center from 1992 until 2007. Appellees Michelle Dawson, Willie Mae Dawson, and Nichelle Underwood were formerly employed by Hudson Memorial Nursing Home in Union County. The nursing-home facilities are owned by their respective counties and operated by administrative boards appointed by the quorum courts. According to the Board of Trustees, the nursing homes' operating expenses, including their employees' compensation, are paid from patient revenues.
In 2013, the appellees asked APERS to determine whether they were entitled to retirement benefits, arguing that they were eligible "county employees" as set forth in Ark. Code Ann. § 24-4-302 (Repl. 2014) and § 24-4-101 (Supp. 2017).[1] Section 24-4-302 provides, in pertinent part, that "all counties shall ... include their employees, as defined in § 24-4-101(14), (17), and (27), in the membership of the Arkansas Public Employees Retirement System[.]"[2] Arkansas Code Annotated § 24-4-101, moreover, provides the following relevant definitions:
(14)(A) "County employees" means all employees whose compensations are payable, either directly or indirectly, by county participating public employers[.]
....
(17)(A)(i)(a) "Employees" means all officers and employees of any office, agency, board, commission, including the Department of Higher Education, or department of a public employer whose compensations were or are payable from funds appropriated by the public employer and all otherwise eligible employees whose compensations were or are payable in whole or part from federal funds[.]
....
(27) "Nonstate employees" means county employees, municipal employees, rural waterworks facilities board employees, regional airport authority employees, public facilities board employees, joint county and municipal sanitation authority employees, regional water distribution board employees, the employees of economic development districts recognized as planning and development districts under § 14-166-202, school employees, and the employees of the Intergovernmental Juvenile Detention Council[.]
The executive director of APERS rejected the appellees' claims for membership. According to the director, the appellees were not eligible "county employees" because *489 their compensation was payable from the patient revenues of the nursing homes, rather than funds appropriated by the quorum courts of their respective counties as required by Ark. Code Ann. § 24-4-101(17)(A)(i)(a) .
The appellees appealed the executive director's decision, and, after an administrative hearing on April 30, 2014, the APERS Board of Trustees made the following relevant factual findings:
4. Each of the three nursing homes is operated by its governing board, not by their respective counties' quorum courts. Each of the three nursing homes generates its own operating funds from patient revenues. None of the three nursing homes receives its operating funds from county appropriations.
5. None of the Applicants' compensations came from appropriated county funds, i.e. , from county quorum court appropriations, either directly or indirectly. The Applicants' compensations were paid out of the revenues received from the nursing homes' patient revenues. No ordinances that appropriated county funds for the nursing homes' employee salaries have been found by any party.
Based on these findings, the Board of Trustees concluded that the appellees were not "county employees."
According to the Board of Trustees, § 24-4-302 required the appellees to meet a combination of the definitions appearing in § 24-4-101(14), (17), and (27), in order to be eligible for membership in APERS, and the appellees fell short because there was no evidence that any of the county quorum courts appropriated funds for their compensation as required by § 24-4-101(17)(A)(i)(a) . The Board of Trustees unanimously determined, therefore, that the appellees "were not eligible for membership in APERS because of their employment at their respective nursing homes," and affirmed the executive director's decision.
The appellees sought judicial review in the Pulaski County Circuit Court pursuant to Ark. Code Ann. § 25-15-212(a) - (b) (Repl. 2014). The circuit court reversed the Board of Trustees' decision, finding, inter alia , that APERS was "clearly wrong" when it "combined the definitions in Ark. Code Ann. § 24-4-101(14), (17), and (27), and required [the appellees] to meet all three definitions, rather than treat each definition as separate and distinct."
Nevertheless, the circuit court found that the appellees met both the definition of "county employee" in § 24-4-101(14)(A) and the definition of "employee" in § 24-4-101(17). The nursing-home administrative boards, which the circuit court found fell within the definition of "county" in the APERS Code, were "participating public employers," for purposes of paying "county employee[s]" under Ark. Code Ann. § 24-4-101(14)(A). The court found, moreover, that the appellees were "paid from revenues generated by the respective facilities at which they worked, thus making Petitioners' compensations payable, either directly or indirectly, by a county participating public employer" under Ark. Code Ann. § 24-4-101(14)(A). The circuit court also found that the appellees met the definition of "employee" in § 24-4-101(17), concluding that the nursing-home administrative boards, as public employers, "appropriated" county funds to pay the appellees.
The Board of Trustees and the nursing homes now appeal from the circuit court's order. We reverse the circuit court and affirm the Board of Trustees' decision denying the appellees' membership in APERS.
*490 II. Standards of Review
"Review of administrative agency decisions by both the circuit court and the appellate court is limited in scope." Shaw v. Ark. Dep't of Human Servs. , 2018 Ark. App. 322, at 5, 550 S.W.3d 925, 928. The standard of review is "whether there is substantial evidence to support the agency's findings." Id. at 5, 550 S.W.3d at 928-29. The appellate court's review, moreover, is directed toward the agency, rather than the circuit court, "because administrative agencies are better equipped by specialization, insight through experience, and more flexible procedures than courts, to determine and analyze legal issues affecting their agencies." Seiz Co. v. Ark. State Highway & Transp. Dep't , 2009 Ark. 361, at 2, 324 S.W.3d 336, 338. This court also
may reverse or modify an agency decision if the substantial rights of [the appellees] have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
(1) In violation of constitutional or statutory provisions;
(2) In excess of the agency's statutory authority;
(3) Made upon unlawful procedure;
(4) Affected by other error or law;
(5) Not supported by substantial evidence of record; or
(6) Arbitrary, capricious, or characterized by abuse of discretion.
Ark. Code Ann. § 25-15-212(h) (Repl. 2014).
"Substantial evidence is valid, legal, and persuasive evidence that a reasonable mind might accept as adequate to support the agency decision." Shaw , 2018 Ark. App. 322, at 5, 550 S.W.3d at 929. The party challenging the agency decision "must prove an absence of substantial evidence and must demonstrate that the proof before the administrative agency was so nearly undisputed that fair-minded persons could not reach [the administrative agency's] conclusion." Id. , 550 S.W.3d at 929. "The question is not whether the evidence would have supported a contrary finding, but whether it supports the finding that was made." Id. , at 5-6, 550 S.W.3d at 929. This court, in other words, "may not simply substitute its judgment and discretion for that of the administrative agency." Id. at 5, 550 S.W.3d at 929.
In addition, "[a]dministrative action may be regarded as arbitrary and capricious where it is not supportable on any rational basis." Ark. State Police Comm'n v. Smith , 338 Ark. 354, 363, 994 S.W.2d 456, 462 (1999). "To have administrative action set aside as arbitrary and capricious, the party challenging the action must prove that it was willful and unreasoning action, without consideration and with a disregard of the facts or circumstances of the case." Id. at 363, 994 S.W.2d at 462. Indeed, "[a]n action is not arbitrary simply because the reviewing court would act differently[,]" and "once substantial evidence is found, it automatically follows that a decision cannot be classified as unreasonable or arbitrary." Id.
Finally, we must review the Board of Trustees' interpretation of the statutes governing the appellees' eligibility for membership in APERS. "The first rule of statutory construction is to construe the statute just as it reads, giving the words their ordinary and usually accepted meaning in common language." Moore v. Ark. Alcoholic Beverage Control Bd. , 2016 Ark. 422, at 5, 503 S.W.3d 796, 800. Additionally, this court "construe[s] statutes so that, if possible, every word is given meaning and effect." Id. In other words, a statute is construed "so that no word is left void, superfluous, or insignificant, and meaning and effect are given to every word in the *491 statute if possible." Id. "When a statute is clear," moreover, "it is given its plain meaning, and this court will not search for legislative intent; rather, that intent must be gathered from the plain meaning of the language used." Id. Finally, this court will review any issue of statutory interpretation de novo, but "the interpretation placed on a statute or regulation by an agency or department charged with its administration is entitled to great deference and should not be overturned unless clearly wrong." Seiz , 2009 Ark. 361, at 3, 324 S.W.3d at 338.
III. Discussion
A. Statutory Construction
The Board of Trustees first argues that its decision to deny membership to the appellees should be upheld because it correctly construed Ark. Code Ann. § 24-4-302 to require the appellees to meet all of the definitions in Ark. Code Ann. § 24-4-101(14), (17), and (27). We agree that all three definitions must be applied to determine the appellees' eligibility for membership in APERS.
The appellees argue, however, that "despite the use of the word, 'and' in Section 24-4-302, the three subsections [in § 24-4-101 ] are irreconcilable as conjunctive requirements for eligibility," and they suggest that the court should exchange "or" for "and" to effectuate the legislature's intent. According to the appellees, § 24-4-101(14) and § 24-4-101(17) set forth two distinct definitions that are specific to county employees and all other eligible employees, respectively. They argue the two definitions cannot be reconciled, moreover, because § 24-4-101(14)(A) allows for "indirect compensation" while § 24-4-101(17)(A)(i)(a) speaks only in terms of direct compensation through an appropriation. They assert, therefore, that only the specific definition for county employees in § 24-4-101(14)(A) should have been applied to determine their eligibility.
The appellees further assert that their disjunctive reading is supported by Act 737 of 2011, now codified at Ark. Code Ann. § 24-4-302(5), which provides nursing homes "[o]wned but not operated by a county" the option to "elect by a vote of at least two-thirds (2/3) of its governing body to exclude employees of the facility from membership in the system[.]" According to the appellees, there was no need for the General Assembly to allow nursing homes to opt "out" of APERS if their employees were never "in" according to § 24-4-101(14)(A). The appellees are mistaken.
This court reads statutes "according to the natural and most obvious import of the language without resorting to subtle and forced constructions for the purpose of either limiting or extending their operation." Hines v. Mills , 187 Ark. 465, 467, 60 S.W.2d 181, 182 (1933). We exchange "or" for "and" in a statute, moreover, only when "the context requires that it be done to effectuate the manifest intention of the Legislature or where not to do so would render the meaning ambiguous or result in an absurdity." Hines , 187 Ark. at 466, 60 S.W.2d at 182.[3]
There is no irreconcilable conflict that compels a disjunctive reading of § 24-4-302. First, the two provisions can be reconciled because § 24-4-101(17) defines the term "employees" as it is used throughout the APERS code, including the definition of "county employees" in § 24-4-101(14)(A). Stated another way, § 24-4-101(14)(A) defines "county employees" as *492 meaning all employees (as defined in § 24-4-101(17) ) whose compensations are payable, either directly or indirectly, by county participating public employers[.]" Indeed, as we see it, setting aside the definition of "employee" in § 24-4-101(17) would be contrary to the General Assembly's intention, expressed elsewhere in that provision, to exclude certain classes of public employees-such as those who work seasonally or part-time-from membership in APERS. See Ark. Code Ann. § 24-4-101(17)(B)(vii) & (viii) (Supp. 2017). Second, § 24-4-101(17)(A)(i)(a) addresses where the money comes from-appropriated funds-while § 24-4-101(14)(A) speaks to who -participating public employers-pays the employees "directly or indirectly" from those funds. Read together, § 24-4-101(14)(A) and § 24-4-101(17)(A)(i)(a) harmoniously provide that "county employees" means all employees who were paid, either directly or indirectly, from funds appropriated by county participating public employers.
We are also unpersuaded that Act 737 of 2011 supports a disjunctive reading of these definitions. That the General Assembly enacted the "opt out" provision in § 24-4-302(5) is not evidence-as the appellees argue-that they were eligible for membership beforehand. Indeed, "it is a rule of statutory construction that the emergency clause of an act can be used in determining the intent of the legislature" Hartford Fire Ins. Co. v. Sauer , 358 Ark. 89, 97, 186 S.W.3d 229, 235 (2004), and the emergency clause of Act 737 provides, in pertinent part, that
[i]t is found and determined by the General Assembly of the State of Arkansas that there is confusion as to whether Arkansas Code § 24-4-302 applies to nursing homes, assisted living facilities, and other health care facilities owned but not operated by counties; that this confusion has resulted in litigation against counties; and that this act is immediately necessary because county-owned nursing homes, assisted living facilities, and other health care facilities that are not operated by the county provide essential services to citizens of the state that are substantially similar to the services of hospitals, and without this clarification these facilities may cease to exist, which will cause irreparable harm to the people who depend on these facilities for day-to-day care. Therefore, an emergency is declared to exist[.]
Act of Mar. 25, 2011, No. 737, § 5, 2011 Ark. Acts 2797. In our view, the emergency clause explains that the measure was intended only as a safe harbor against litigation that arose from "confusion as to whether Arkansas Code § 24-4-302 applies to nursing homes ... owned but not operated by the counties." We also believe that the view that the General Assembly expressed in the emergency clause-that eligibility for the facilities' employees risked the continued existence of the facilities themselves-is further evidence it did not intend, beforehand, for the employees to be eligible under § 24-4-302 and § 24-4-101.
B. Whether the Appellees Were County Employees
The Board of Trustees next argues that the appellees failed to meet the combined definition of county employee in § 24-4-302 in several respects. First, the Board contends that the nursing-home administrative boards act independently from the county and, thus, are not "participating public employers" for purposes of § 24-4-101(14)(A), or county employers for purposes of § 24-4-101(27). Second, and consistently with its findings below, the Board asserts that the appellees do not meet the general definition of "employee" in *493 § 24-4-101(17)(A)(i)(a) because they were paid from the patient revenue of the nursing homes, rather than from appropriations made by the quorum courts of each county. Assuming, arguendo, that the nursing-home administrative boards and their respective counties are synonymous for purposes of § 24-4-101(14)(A) and (27), the administrative record supports the Board of Trustees' finding that the appellees were not paid from appropriated funds as required by § 24-4-101(17)(A)(i)(a) .
We turn to the County Code to determine how the General Assembly intended § 24-4-101(17)(A)(i)(a) to apply to persons claiming eligibility for APERS as county employees. Arkansas Code Annotated § 14-14-1206(a) (Repl. 2013) provides that "[t]he quorum court of each county shall fix by ordinance the number and compensation of all county employees, including bonus or lump sum payment." Arkansas Code Annotated § 14-14-1203(a) (Supp. 2017) further provides that "[a]ll compensation, including salary, hourly compensation, expense allowances, training expenses, and other remunerations, allowed to any county officer, district officer, county-officer elect, district officer-elect, or employee is made only on specific appropriation by the quorum court of the county." See also Ark. Code Ann. § 21-6-301(b) (Repl. 2016) (similarly requiring the quorum court to make specific appropriations for the compensation and expenses of county employees). An appropriation ordinance, moreover, is "a measure by which the county quorum court designates a particular fund, or sets apart a specific portion of county revenue in the treasury, to be applied to some general object of expenditure or to some individual purchase or expense of the county." Ark. Code Ann. § 14-14-907(a)(1) (Repl. 2013).
With these provisions in mind, fair-minded persons could conclude, as the Board of Trustees did, that the appellees failed to demonstrate that they were paid from appropriated funds as required by § 24-4-101(17)(A)(i)(a) . As the appellees appeared to concede several times in the hearing before the Board of Trustees, there are no ordinances in the record that specifically designate county money for the appellees' compensation as employees of the nursing homes.
The appellees argue, however, that the Board of Trustees nonetheless overlooked evidence that they were paid through appropriations within the meaning of § 24-4-101(17)(A)(i)(a) . First, they assert that all three nursing-home administrative boards, using the authority granted by the quorum courts, indirectly appropriated public money for their compensation when they hired them, budgeted for their salaries, and approved their pay increases. We disagree that these decisions of the nursing home administrative boards constitute "appropriations" for purposes of § 24-4-101(17)(i)(a) , as it is clear, from the foregoing provisions, that the General Assembly defines an "appropriation" as a legislative act of the quorum court.
Second, the appellees contend that ordinances in Craighead County and Lawrence County, authorizing the issuance of revenue bonds for capital improvements, directly appropriated public money for their compensation. The Craighead County ordinance, for example, pledges the net amount of nursing-home revenue remaining "after payment of the costs of operating and maintaining" the Craighead County Nursing Center to payment of the bonds. According to the appellees, ordinances with provisions like these constitute "appropriations," which would qualify them as employees under Ark. Code Ann. § 24-4-101(17).
Again, we disagree. Neither ordinance purports to fix the number and compensation *494 of the employees of the nursing homes in Craighead County or Lawrence County; indeed, the General Assembly has authorized counties to issue revenue bonds only for capital-improvement projects and not general employee compensations. See Ark. Code Ann. § 14-164-402(2) (Supp. 2017) (defining "capital improvements" as various county buildings and facilities) and § 14-164-405(a) (Supp. 2017) (authorizing counties to enact ordinances issuing revenue bonds for capital improvements). Therefore, these ordinances are not the kind of specific appropriations that we believe the General Assembly intended as a condition of APERS eligibility under § 24-4-101(17)(A)(i)(a) .
Garrison and Hall also argue that the Board of Trustees overlooked other evidence that, they say, demonstrates that the counties appropriated money for their compensation. First, they claim that appropriations of unearmarked funds that the Craighead County Quorum Court made to the Craighead County Nursing Center in 1999, and the Lawrence County Quorum Court made to Lawrence Hall Nursing Center in 1977, are the sorts of appropriations that would qualify them for benefits under § 24-4-101(17)(A)(i)(a) . We disagree, as there is no indication, in either measure, that those funds were intended for employee compensations or any other operating expense of those facilities. In any event, these one-time appropriations are not of the nature that would provide regular periodic payments to employees.
Garrison additionally claims that Craighead County Ordinance 2000-9, which reorganizes the nursing-home administrative board, is an appropriation ordinance because it provides that "[t]he 2000 budget of the Craighead County Nursing Center [will] be approved by the Craighead County Quorum Court as are the other departments of county government." Craighead Cty., Ark. Ord. 2000-9 (2009). According to Garrison, this is an appropriation by reference under Ark. Code Ann. § 14-14-907(b) (Repl. 2013), which provides, in pertinent part, that a quorum court "may adopt, amend, or repeal an appropriation ordinance which incorporates by reference the provisions of any county budget or portion of a county budget[.]"
We read Craighead County Ordinance 2000-9 as providing only that the nursing home's budget may be adopted through a future action by the quorum court. It is not, in and of itself, an appropriation ordinance that incorporates the nursing home's budget in accordance with § 14-14-907(b), and Garrison does not point to any other such ordinance in the record for the year 2000, or any other year during the course of her employment. Fair-minded persons could find, therefore, that the administrative record does not support her claim that she qualified for benefits under § 24-4-101(17)(A)(i)(a) .
IV. Conclusion
We hold that the Board of Trustees did not clearly err by requiring the appellees to meet the combined definition of "county employees" under Ark. Code Ann. §§ 24-4-302 and 24-4-101(14), (17), and (27). The Board of Trustees also reasonably interpreted § 24-4-101(17)(A)(i)(a) to require the appellees to have received compensation from funds specifically appropriated for that purpose. Finally, we find that the administrative record supports the Board of Trustees' finding that the appellees were not compensated in that manner. Therefore, we reverse the circuit court's judgment and affirm the Board of Trustees' decision.
Reversed.
Hixson, Murphy, and Brown, JJ., agree.
Gruber, C.J., concurs.
Harrison, J., dissents.

The relevant provisions in § 24-4-101 and § 24-4-302 have not been amended since 2013.

Arkansas Code Annotated section 24-4-301(b) (Repl. 2014), requiring county employees to become members of the APERS system as a condition of continuing or obtaining county employment, similarly applies to "[a]ll county employees, as defined in § 24-4-101(14), (17), and (27) [.]"

We are aware of our dissenting colleague's point that the word "and" did not appear until § 24-4-302 was codified. Nevertheless, for the reasons we discuss here, we believe that the codifier's use of the conjunction is consistent with the General Assembly's intent.