Cite as 2021 Ark. App. 43

# ARKANSAS COURT OF APPEALS
DIVISION II
**No.** CV-19-62

| | |
|---|---|
| ARKANSAS DEPARTMENT OF HUMAN SERVICES | **Opinion Delivered:** February 3, 2021 |
| APPELLANT | |
| | APPEAL FROM THE IZARD COUNTY CIRCUIT COURT [NO. 33CV-18-77] |
| V. | |
| STEVEN MITCHELL | |
| APPELLEE | HONORABLE MAUREEN HARROD, JUDGE |
| | REVERSED |

## ROBERT J. GLADWIN, Judge

In separate administrative appeals, the Circuit Court of Izard County reversed the Arkansas Department of Human Services' findings that the appellee, Steven Mitchell, sexually abused two minors, B.T. and J.C., while he was a teacher at Melbourne High School in 2004. In both cases, the circuit court determined that reversal was warranted because the Arkansas Department of Human Services (DHS) failed to timely notify Mitchell of its true findings against him.

DHS has separately appealed the circuit court's orders. We decide both appeals in separate opinions that we issue today. *See Ark. Dep't of Human Servs. v. Mitchell*, 2021 Ark. App. 53, 618 S.W.3d 148. This case concerns the true finding that the administrative law judge (ALJ) made with respect to the minor B.T.

On appeal, DHS contends that the administrative decision should be upheld because substantial evidence supports the true finding. The agency also asserts that the untimely

notice and delayed administrative appeal did not violate the state and federal guarantees of due process, as the circuit court ruled. Finally, DHS contends that the administrative decision should be upheld because Mitchell failed to demonstrate that he was prejudiced by the agency's failure to follow statutory procedure requiring timely notice and administrative hearings.

We agree that substantial evidence supports the ALJ's finding that Mitchell sexually abused B.T. In addition, while we do not condone the long and unexplained delay in notifying Mitchell of the true finding regarding B.T., we agree that DHS's failure to follow statutory procedure did not violate Mitchell's right to due process or otherwise prejudice his substantial rights. Accordingly, we reverse the circuit court's decision.

I. *Facts and Procedural History*

On June 4, 2004, the Arkansas State Police Child Abuse Hotline received a report that Mitchell was sexually abusing students at Melbourne High School, where he taught agriculture and supervised out-of-state field trips for the Future Farmers of America. The report alleged that Mitchell committed sexual abuse through indecent exposure and sexual contact with six of his minor students. The Arkansas State Police Crimes Against Children Division (CACD) investigated and determined that the allegations regarding J.C., B.T., R.C., and another student were "true." As a consequence of that finding, Mitchell's name was placed on the Child Maltreatment Central Registry (the Registry).

In August 2005, Mitchell pleaded guilty to two counts of second-degree sexual assault regarding J.C. and B.T. Several charges involving other minors were dropped. A few years later, in 2009, Mitchell was acquitted of related charges in federal court, including one

charge of transporting J.C. over state lines for sexual purposes. In 2010, the Arkansas Department of Correction Sex Offender Screening and Risk Assessment (SOSRA) determined that Mitchell's offenses warranted Level 3 community notification.

In late 2017, Mitchell applied to Sex Offender Community Notification Assessment (SOCNA)[1] for a reassessment of his community-notification level. As he gathered documentation for that process, Mitchell learned for the first time that his name had been placed on the Registry and there were true findings against him. DHS thereafter formally notified Mitchell of the true findings and his right to an administrative hearing. Those notices were dated December 27, 2017.

After receiving Mitchell's timely request, DHS's Office of Appeals and Hearings scheduled an in-person hearing regarding all the true findings on April 18, 2018. Mitchell filed several motions prior to the hearing. Among other things, he argued that he was "denied his procedural and substantive due process rights when the State failed to [timely] notify him of the true findings." More specifically, he contended in relevant part that

> [t]he fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner. [Citation omitted.] The meaningful time would have obviously been during the pendency of this matter, not nearly fourteen years later when [Mitchell's] liberty, property, and privacy interests have been deprived by an arbitrary abuse of government powers.
>
> As a direct result, [Mitchell's] employment was terminated and his teaching license was revoked. He was coerced into pleading guilty, assessed as a level 3 sex offender, which resulted in a substantial loss of substantial rights and imposed restrictions, and endured a heavy financial burden of over $525,000 in legal fees and the loss of at

---

[1]Since Mitchell's first assessment in 2010, Sex Offender Screening and Risk Assessment (SOSRA) was renamed Sex Offender Community Notification Assessment (SOCNA).

3

least $700,000 in compensation. Mitchell had a substantial liberty and property interest that was prejudiced by this adverse finding. [Citation omitted.]

The ALJ denied all of Mitchell's pretrial motions, including those alleging his due-process claim. The ALJ had no authority, he said, to "make rulings on constitutional issues."

At the hearing, Mitchell introduced evidence that cast doubt on the credibility of the CACD's investigation, including a federal court transcript in which one of the lead investigators, Jeannette Cooper, acknowledged having used questionable interview techniques to elicit information from the boys. There was also evidence that Cooper and her supervisor were later dismissed from their positions at the CACD because of poor job performance.

Mitchell also repeated his argument that the untimely notice and hearing, occurring approximately fourteen years after the conclusion of the investigation, violated due process. He argued, in particular, that he was prevented from calling J.C., B.T., R.C., and another student as witnesses at a 2004 hearing in which "at the very least, [he] would have received impeachment material that then could have been used in [his] criminal trial."

The ALJ addressed the true findings regarding J.C., R.C., and B.T. in two separate orders that were issued on May 1, 2018. In DHS case number 2018-0456, the ALJ found that there was insufficient evidence to support the CACD's conclusion that Mitchell sexually abused B.T. by indecent exposure. The ALJ found that B.T.'s inconsistent statements, as well as the CACD's questionable investigative methods and failure to produce contemporaneous recordings of the interviews, could not credibly establish that Mitchell exposed himself to B.T. The ALJ also found, however, that B.T.'s statements that he and Mitchell had sexual contact, as well as Mitchell's admissions regarding B.T. in the sex-

4

offender assessment and in the criminal case, established that he sexually abused B.T. Considering also the attendant circumstances of the contact, the ALJ concluded that the CACD met its burden of proving that Mitchell sexually abused B.T. and that his name warranted placement on the Child Maltreatment Central Registry.

Mitchell followed the administrative order with a motion for reconsideration. Among other things, he invoked the law of collateral estoppel to argue that the ALJ improperly considered his guilty plea in the criminal case as an admission of child maltreatment. Mitchell also argued that Arkansas Code Annotated section 12-12-917(b)(4)(B) (Supp. 2019), which affords immunity for any prior sexual misconduct disclosed during a sex-offender assessment, barred the ALJ's consideration of any admissions that he made there. In addition, he reiterated his constitutional arguments based on the untimely notice that DHS provided. The ALJ denied both motions, ruling that Mitchell failed to raise any "clear error of law for [him] to decide," and stating, once again, that the ALJ did not "have the authority to make decisions on constitutional arguments."

On May 31, 2018, Mitchell filed a timely petition for judicial review, and after hearing argument, the circuit court reversed the ALJ's decision. The circuit court found, in particular, that the agency decision was "based on unlawful procedures and violated Mitchell's constitutional rights of due process" because "[t]he State failed to follow its own procedures and did not properly notify Mitchell of the true finding fourteen years ago." After unsuccessfully moving for reconsideration, DHS now appeals that decision.

## II. *Standards of Review*

"Review of administrative-agency decisions by both the circuit court and the appellate court is limited in scope." *Shaw v. Ark. Dep't of Human Servs.*, 2018 Ark. App. 322, at 5, 550 S.W.3d 925, 928. The standard of review is "whether there is substantial evidence to support the agency's findings." *Shaw*, 2018 Ark. App. 322, at 5, 550 S.W.3d at 928–29. The appellate court's review, moreover, is directed toward the agency, rather than the circuit court, "because administrative agencies are better equipped by specialization, insight through experience, and more flexible procedures than courts to determine and analyze legal issues affecting their agencies." *Seiz Co. v. Ark. State Highway & Transp. Dep't*, 2009 Ark. 361, at 2, 324 S.W.3d 336, 338. This court also

> may reverse or modify an agency decision if the substantial rights of [the appellee] [have] been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
>
> (1) In violation of constitutional or statutory provisions;
>
> (2) In excess of the agency's statutory authority;
>
> (3) Made upon unlawful procedure;
>
> (4) Affected by other error or law;
>
> (5) Not supported by substantial evidence of record;
>
> (6) Arbitrary, capricious, or characterized by abuse of discretion.

Ark. Code Ann. § 25-15-212(h) (Repl. 2014).

"Substantial evidence is valid, legal, and persuasive evidence that a reasonable mind might accept as adequate to support the agency decision." *Shaw*, 2018 Ark. App. 322, at 5,

6

550 S.W.3d at 929. The party challenging the agency decision "must prove an absence of substantial evidence and must demonstrate that the proof before the administrative agency was so nearly undisputed that fair-minded persons could not reach [the administrative agency's] conclusion." *Id*. "The question is not whether the evidence would have supported a contrary finding, but whether it supports the finding that was made." *Id*. at 5–6, 550 S.W.3d at 929. This court, in other words, "may not simply substitute its judgment and discretion for that of the administrative agency." *Id*.

In addition, "administrative action may be regarded as arbitrary and capricious where it is not supportable on any rational basis." *Ark. State Police Comm'n v. Smith*, 338 Ark. 354, 363, 994 S.W.2d 456, 462 (1999). "To have administrative action set aside as arbitrary and capricious, the party challenging the action must prove that it was willful and unreasoning action, without consideration and with a disregard of the facts or circumstances of the case." *Id*. Indeed, "[a]n action is not arbitrary simply because the reviewing court would act differently," and "once substantial evidence is found, it automatically follows that a decision cannot be classified as unreasonable or arbitrary." *Id*.

III. *Relevant Statutes*

A brief review of key provisions of the Child Maltreatment Act and the criminal code will provide context for the issues at hand. At the time that the CACD investigated Mitchell in 2004, the Act provided that "in every case in which a [child maltreatment] report is determined to be true, [DHS] shall notify each subject of the report of the determination." Ark. Code Ann. § 12-12-512(c)(1)(A)(i) (Repl. 2003). The notification was required to include the investigative determination as well as a statement that "the

7

person named as the offender of the true report may request an administrative hearing." Ark. Code Ann. § 12-12-512(c)(1)(C)(i) & (ii). A request for a hearing was timely if it was made within thirty days of the offender's receipt of the notice. Ark. Code Ann. § 12-12-512(c)(1)(C)(iii).

Once requested, a hearing generally had to occur within 180 days. Ark. Code Ann. § 12-12-512(c)(2). The 180-day limit did not apply, however, when "there [was] an ongoing criminal investigation" or when criminal charges were (or were expected to be) filed "regarding the occurrence that [was] the subject of the child maltreatment report." Ark. Code Ann. § 12-12-512(c)(2)(c)(i). In those instances, "the administrative hearing [was] stayed pending the final disposition of the criminal proceedings." Ark. Code Ann. § 12-12-512(c)(2)(C)(ii).

Sexual abuse, the form of maltreatment at issue here, included indecent exposure by a person ten years of age or older to a person younger than eighteen years of age. Ark. Code Ann. § 12-12-503(17)(A)(iii) (Repl. 2003). It also included sexual contact "[b]y a . . . caretaker to a person younger than eighteen (18) years of age." Ark. Code Ann. § 12-12-503(17)(C)(i). "Sexual contact" was defined as "any act of sexual gratification involving the touching, directly or through the clothing, of the sex organs, buttocks, or anus of a person or the breast of a female." Ark. Code Ann. § 12-12-503(18)(A). Moreover, a "caretaker" was "any person ten years of age or older who is entrusted with a child's care" including an agent or employee of a public or private school. Ark. Code Ann. § 12-12-503(3).

Finally, as indicated above, Mitchell pleaded guilty to two counts of sexual assault in the second degree. A person committed that offense when he or she "[e]ngaged in sexual

contact with another person who is less than eighteen (18) years of age" and the person was, among other things, "an employee in the minor's school or school district." Ark. Code Ann. § 5-14-125(4)(A)(iii) (Supp. 2003). Like the Child Maltreatment Act, the criminal code defined "sexual contact" as "any act of sexual gratification involving the touching, directly or through the clothing, of the sex organs, buttocks, or anus of a person or breast of a female." Ark. Code Ann. § 5-14-101(9) (Supp. 2003).

IV. *Discussion*

A. Substantial Evidence

DHS first argues that the ALJ's finding that Mitchell sexually abused B.T. is supported by substantial evidence. DHS contends that "Mitchell's criminal disposition sheet, Mitchell's sex offender assessment, and the CACD interview summaries were valid, legal, and persuasive evidence that reasonable minds would accept as adequate to support a conclusion and force the mind to pass beyond speculation and conjecture." DHS further contends that Mitchell's arguments against considering that evidence, including issue preclusion and statutory immunity for statements made during sex-offender assessments, lack merit. We agree.

1. *The evidence supporting sexual abuse*

As the ALJ noted, B.T. disclosed during the investigation that he and Mitchell had touched each other's genitals. It was undisputed that B.T. was under eighteen years of age at the time of the contact, and as a teacher at B.T.'s high school, Mitchell met the definition of "caretaker" under the Child Maltreatment Act. Moreover, and as indicated above, Mitchell pleaded guilty to two counts of sexual assault in the second degree, and during the

9

administrative hearing, Mitchell acknowledged that one of his guilty pleas regarded B.T. Finally, the report of Mitchell's sex-offender assessment indicates that Mitchell "admitted to sexual contact with two male students (for whom he was convicted) prior to his polygraph examination." We therefore hold that this evidence supports the ALJ's true finding of sexual abuse regarding B.T.

2. *Admissibility of the convictions and the sex-offender-assessment report*

We are also not persuaded by Mitchell's contention that the ALJ considered inadmissible evidence. During the administrative proceedings, Mitchell argued that the ALJ should not consider his criminal convictions or his admissions during the sex-offender assessment. He argued that the criminal conviction should not have any weight for two reasons. First, because this court rejected it as a basis for a dependency-neglect finding in *Arkansas Department of Health and Human Services v. Mitchell*, 100 Ark. App. 45, 263 S.W.3d 474 (2007); second, for purposes of collateral estoppel, a guilty plea is not the equivalent of a conviction that has been "actually litigated." Third, he argued that Arkansas Code Annotated section 12-12-917(b)(4)(B), declaring that "[a] sex offender has immunity for a statement made by him or her in the course of assessment with respect to prior conduct under the immunity provisions of section 16-43-601," barred the ALJ's consideration of his admissions during his 2010 sex-offender assessment. He was mistaken.

First, Mitchell's reliance on our holding in *Arkansas Department of Health and Human Services v. Mitchell* was misplaced. There, we concluded that Mitchell's guilty pleas to sexually assaulting J.C. and B.T. were insufficient, in and of themselves, to warrant a dependency-neglect finding regarding his own children. *See Mitchell*, 100 Ark. App. at 50, 263 S.W.3d

at 578. We held that there must be additional evidence indicating that Mitchell was a threat to his children (such as a history of assaulting family members) or indicating that his conditions of supervised release prohibited contact with minors. *Id.* We did not hold, as Mitchell apparently would have it, that his guilty pleas were irrelevant to the determination of whether Mitchell committed child maltreatment regarding the *same victims*. Also, unlike the dependency-neglect case, there was other evidence, including Mitchell's admission during the sex-offender assessment and the minors' statements during the investigation, to support the ALJ's findings.

Second, while guilty pleas may not be "adjudications" for purposes of applying collateral estoppel, *see Bradley Ventures, Inc. v. Farm Bureau Mut. Ins. Co.*, 371 Ark. 229, 237, 264 S.W.3d 485, 492 (2007), that doctrine is inapposite here. DHS did not argue, and the ALJ did not find, that Mitchell was barred from relitigating whether he sexually abused B.T. Mitchell still had a hearing and presented defenses, and the ALJ did not treat the guilty plea as conclusive proof of child maltreatment. Rather, the plea corroborated other evidence, including Mitchell's admission during the sex-offender assessment and B.T.'s statement during the investigation.

Finally, section 12-12-917(b)(4)(B) did not bar the ALJ from considering Mitchell's admission in the sex-offender-assessment report, as he claims. By reference to section 16-43-601 and subsequent provisions, that statute provides immunity only from criminal prosecutions, *see, e.g.*, § 16-43-605, and thereby applies only to conduct that has not been prosecuted, and not, as here, conduct that ended in two convictions. Accordingly, because

the ALJ did not improperly consider Mitchell's guilty plea, and substantial evidence supports the ALJ's finding that Mitchell sexually abused B.T., we affirm.

## B. Due Process

DHS next argues that the untimely notice and hearing did not violate due process. The agency suggests that the constitutional guarantees were not implicated because Mitchell failed to establish that his placement on the Child Maltreatment Registry affected a protected interest. DHS further argues that even if Mitchell had such an interest, it must be weighed against that facts that he ultimately was provided a hearing and the agency's substantial interest in protecting children from maltreatment. Although we analyze the issue somewhat differently, we agree that the untimely notice and hearing did not violate due process.[2]

As an initial matter, the agency's due-process argument, which urges the court to consider the three factors from *Mathews v. Eldridge*, 424 U.S. 319, 334–35 (1976), speaks to a different question than the one at issue here. Those factors, calling for courts to consider (1) the private interest that will be affected by the official action; (2) the risk of erroneous deprivation of such interest through procedures used and the probative value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail, go to determining the sufficiency of existing procedures, or stated another way, whether any additional procedures are due. Mitchell did

---

[2]Mitchell suggests that DHS failed to preserve its due-process arguments by not making them below. That argument is without merit for several reasons, including that the alleged due-process violation was argued in the circuit court hearing as well as in the agency's motions for reconsideration following the circuit court's order.

not make such a challenge. As we read his arguments below, he had no issue with the constitutional sufficiency of the procedure provided in the Child Maltreatment Act. That is, he did not argue that he was due any additional procedure than that already provided in the statute. His complaint, rather, was that DHS "deviated and violated [established] procedures in his case, thereby violating his due process rights." *Mitchell v. Sex Offender Assessment Comm.*, 2020 Ark. App. 261, at 13, 600 S.W.3d 648, 656. Consequently, there is no need for this court to determine the nature of Mitchell's protected interest,[3] whether additional safeguards are necessary to protect that interest, or whether any governmental interest may be burdened by any additional procedure.

Mitchell's specific complaint was that the agency's failure to timely notify him of the true findings denied him a meaningful opportunity to be heard before his name was placed on the Registry, and he suggests that an earlier hearing would have led to a different outcome. He is mistaken.

There is no question that Mitchell did not get timely notice of the true finding, and his administrative hearing, after fourteen years, was significantly late. "A failure to meet state regulatory guidelines alone, however, does not establish a violation of . . . due process." *Pease v. Burns*, 719 F. Supp. 2d 143, 152 (D. Mass. 2010). Rather, "the constitutional significance of a particular delay must be evaluated in light of the importance of the private interest and the harm to this interest occasioned by the delay; the justification offered by the

---

[3]Our supreme court appears to have settled the question of whether Mitchell has a protected interest. In child–maltreatment cases, the court has observed that "parties appearing before administrative agencies are entitled to due process." *See, e.g.*, *Ark. Dep't of Human Servs. v. A.B.*, 374 Ark. 193, 201, 286 S.W.3d 712, 718 (2008).

Government for the delay and its relation to the underlying governmental interest; and the likelihood that the interim decision may have been mistaken." *Id*. (quoting *Fed. Deposit Ins. Corp. v. Mallen*, 486 U.S. 230, 242 (1988)). An appellant cannot succeed on a procedural due-process claim, moreover, if state law provides a meaningful postdeprivation remedy for the alleged loss. *Mitchell*, 2020 Ark. App. 261, at 13, 600 S.W.3d at 656.

While we do not condone DHS's conduct in this matter, we cannot say that the delay in the postdeprivation hearing violated due process. Mitchell cannot claim that the delay prejudiced the outcome of his criminal proceeding because the CACD's investigation was referred to the prosecutor after the CACD investigation concluded on June 18, 2004, and the administrative hearing would not have occurred, in any event, until after the final disposition of the criminal proceedings. *See* Ark. Code Ann. § 12-12-512(c)(2)(C)(ii) (Repl. 2003). Mitchell's guilty plea also would have had the same relevance at an administrative hearing that it did in 2018; therefore, he cannot show that an earlier hearing would have resulted in the removal of his name from the registry. The hearing held in 2018, moreover, was still a meaningful one. Mitchell was able to attack the credibility of the investigation and convince the ALJ that the true finding based on indecent exposure should be reversed. Accordingly, because the delayed notice and hearing did not result in a violation of due process for these reasons, we reverse the circuit court's order and affirm the administrative decision.

## C. Unlawful Procedure

DHS last argues that the administrative decision should be upheld because Mitchell failed to show that he suffered prejudice as a result of the agency's failure to serve him with

14

notice as required by section 12-12-512(c)(1)(A)(i) or to hold a hearing within the time provided by section 12-12-512(c). In particular, DHS argues that Mitchell ultimately was provided a hearing and, considering its split outcome, actually benefited from the delay. DHS is correct.

Courts may reverse or modify the decision of an agency only if the substantial rights of the petitioner are prejudiced by a decision made upon on unlawful procedure, *see* Ark. Code Ann. § 12-15-212(h), and for the reasons discussed above, Mitchell has not made that showing here.

V. *Conclusion*

Substantial evidence supports the true finding of sexual abuse regarding B.T. The ALJ did not consider evidence that was inadmissible, and the delayed notice and hearing did not violate due process or prejudice Mitchell's other substantial rights under the circumstances of this case. Accordingly, we reverse the circuit court's order and affirm the ALJ's true finding of sexual abuse.

Reversed.

MURPHY and BROWN, JJ., agree.

*Ellen K. Howard*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellant.

*Steven D. Mitchell*, pro se appellee.

15