Cite as 2021 Ark. App. 53

# ARKANSAS COURT OF APPEALS

DIVISION II

**No.** CV–19–63

| | |
|---|---|
| ARKANSAS DEPARTMENT OF HUMAN SERVICES | **Opinion Delivered:** February 3, 2021 |
| APPELLANT | |
| | APPEAL FROM THE IZARD COUNTY CIRCUIT COURT [NO. 33CV-18-76] |
| V. | |
| STEVEN MITCHELL | |
| APPELLEE | HONORABLE MAUREEN HARROD, JUDGE |
| | REVERSED |

## WAYMOND M. BROWN, Judge

In separate administrative appeals, the Circuit Court of Izard County reversed the Arkansas Department of Human Services' findings that the appellee, Steven Mitchell, sexually abused two minors, B.T. and J.C., while he was a teacher at Melbourne High School in 2004. In both cases, the circuit court determined that reversal was warranted because the Arkansas Department of Human Services (DHS) failed to timely notify Mitchell of its true findings against him.

DHS has separately appealed the circuit court's orders. We decide both appeals in separate opinions that we issue today.[1] This case concerns the true finding that the administrative law judge (ALJ) made with respect to J.C.

---

[1] *See Ark. Dep't of Human Servs. v. Mitchell*, 2021 Ark. App. 43, 616 S.W.3d 289.

On appeal, DHS contends that the administrative decision should be upheld because substantial evidence supports the true finding. The agency also asserts that the untimely notice and delayed administrative appeal did not violate the state and federal guarantees of due process. Finally, DHS contends that the administrative decision should be upheld because Mitchell failed to demonstrate that he was prejudiced by the agency's failure to follow statutory procedure requiring timely notice and administrative hearings.

We agree that substantial evidence supports the ALJ's finding that Mitchell sexually abused J.C. In addition, while we do not condone the long and unexplained delay in notifying Mitchell of the true finding regarding J.C., we agree that DHS's failure to follow statutory procedure did not violate Mitchell's right to due process or otherwise prejudice his substantial rights. Therefore, we reverse the circuit court's decision.

I. *Factual Background*

On June 4, 2004, the Arkansas State Police Child Abuse Hotline received a report that Mitchell was sexually abusing students at Melbourne High School where Mitchell taught agriculture and supervised out-of-state field trips for the Future Farmers of America. The report alleged that Mitchell committed sexual abuse through indecent exposure and sexual contact with six of his minor students. The Arkansas State Police's Crimes Against Children Division (CACD) investigated and determined that the allegations regarding J.C., B.T., R.C., and another student were "true." As a consequence of that finding, Mitchell's name was placed on the Child Maltreatment Central Registry.

In August 2005, Mitchell pleaded guilty to two counts of second-degree sexual assault regarding J.C. and B.T. Several charges involving other minors were dropped. A few

2

years later, in 2009, Mitchell was acquitted of related charges in federal court, including one charge of transporting J.C. over state lines for sexual purposes. In 2010, the Arkansas Department of Correction's Sex Offender Screening and Risk Assessment (SOSRA) determined that Mitchell's offenses warranted Level 3 community notification.

In late 2017, Mitchell applied to Sex Offender Community Notification Assessment (SOCNA)[2] for a reassessment of his community-notification level. As he gathered documentation for that process, Mitchell learned for the first time that his name had been placed on the Child Maltreatment Central Registry and there were true findings against him. DHS thereafter formally notified Mitchell of the true findings and his right to an administrative hearing. Those notices were dated December 27, 2017.

After receiving Mitchell's timely request, DHS's Office of Appeals and Hearings scheduled an in-person hearing regarding all the true findings on April 18, 2018. Mitchell filed several motions prior to the hearing. Among other things, Mitchell argued that he was "denied his procedural and substantive due process rights when the State failed to [timely] notify him of the true findings." More specifically, he contended in relevant part that

> [t]he fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner. [Citation omitted] The meaningful time would have obviously been during the pendency of this matter, not nearly fourteen years later when [Mitchell's] liberty, property, and privacy interests have been deprived by an arbitrary abuse of government powers.
>
> As a direct result, [Mitchell's] employment was terminated and his teaching license was revoked. He was coerced into pleading guilty, assessed as a level 3 sex offender, which resulted in a substantial loss of substantial rights and imposed restrictions, and

---

[2]Since Mitchell's first assessment in 2010, Sex Offender Screening and Risk Assessment (SOSRA) was renamed Sex Offender Community Notification Assessment (SOCNA).

3

endured a heavy financial burden of over $525,000 in legal fees and the loss of at least $700,000 in compensation. Mitchell had a substantial liberty and property interest that was prejudiced by this adverse finding. [Citation omitted.]

The ALJ denied all of Mitchell's pretrial motions, including those alleging his due-process claim. The ALJ had no authority, he said, to "make rulings on constitutional issues."

At the hearing, Mitchell introduced evidence that cast doubt on the credibility of the CACD's investigation, including a federal court transcript in which one of the lead investigators, Jeannette Cooper, acknowledged using questionable interview techniques to elicit information from the boys. There was also evidence that Cooper and her supervisor, Bob Leal, were later dismissed from their positions at the CACD because of poor job performance.

Mitchell also repeated his argument that the untimely notice and hearing, occurring approximately fourteen years after the conclusion of the investigation, violated due process. He argued, in particular, that he was prevented from calling J.C., B.T., R.C., and another student as witnesses at a 2004 hearing in which "at the very least, I would have received impeachment material that then could have been used in my criminal trial."

The ALJ addressed the true findings regarding J.C., R.C., and B.T. in two separate orders that were issued on May 1, 2018. The order in DHS case number 2018-0452 regarded R.C. and J.C. There, the ALJ found that there was insufficient evidence to support the single allegation of indecent exposure against R.C. According to the ALJ, R.C.'s statements regarding the alleged incidents were "inconsistent and lacking in credibility or reliability." The ALJ also found CACD's summation of R.C.'s interview "concerning" because DHS failed to produce the contemporaneous recording that the CACD indicated

had been made. The ALJ further noted Ms. Cooper's admissions during her testimony in federal court, which raised "issue[s] with the credibility and reliability of [her] interviews." Consequently, the ALJ changed CACD's finding of indecent exposure regarding R.C. to "unsubstantiated."

The ALJ likewise found that there was insufficient evidence to support the CACD's true finding of indecent exposure with respect to J.C. Although the ALJ noted the same concerns regarding the credibility of the CACD investigation, the ALJ found that Mitchell's admissions during his sex-offender assessment interview and the state criminal case established that he had, in fact, exposed himself to J.C. Nonetheless, the ALJ reversed the true finding of indecent exposure regarding J.C. because there was insufficient evidence to prove another element of the offense; that is, that the exposure was likely to cause affront or alarm.

The ALJ also concluded, however, that sufficient evidence supported the CACD's finding that Mitchell sexually abused J.C. by sexual contact. Once again, the ALJ relied on Mitchell's admissions in the sex-offender assessment interview and in the criminal case, where he pleaded guilty to sexually assaulting J.C. In the ALJ's view, these admissions corroborated J.C.'s disclosures of sexual contact with Mitchell. The ALJ also considered the attendant circumstances, including Mitchell's and J.C.'s relative ages and Mitchell's position as J.C.'s caretaker, and concluded that the "allegations of child maltreatment against [Mitchell] are true," and "[his] name shall be listed on the Arkansas Child Maltreatment Central Registry" with respect to sexual abuse involving J.C.

Mitchell thereafter filed a motion for reconsideration. Among other things, he invoked the law of collateral estoppel to argue that the ALJ improperly considered his guilty plea in the criminal case as an admission of child maltreatment. Mitchell also argued that Arkansas Code Annotated section 12-12-917(b)(4)(B), which affords immunity for any prior sexual misconduct disclosed during a sex-offender assessment, barred the ALJ's consideration of any admissions that he made there. In addition, he reiterated his constitutional arguments based on the untimely notice that DHS provided. The ALJ denied both motions, ruling that Mitchell failed to raise any "clear error of law for [him] to decide," and stating, once again, that the ALJ did not "have the authority to make decisions on constitutional arguments."

On May 31, 2018, Mitchell filed timely petitions for judicial review, and after hearing argument, the circuit court reversed the ALJ's decision. The circuit court found, in particular, that the agency decision was "based on unlawful procedures and violated Mitchell's constitutional rights of due process" because "[t]he State failed to follow its own procedures and did not properly notify Mitchell of the true finding fourteen years ago." After unsuccessfully moving for reconsideration, DHS now appeals that decision.

## II. *Standards of Review*

Review of administrative agency decisions by both the circuit court and the appellate court is limited in scope.[3] The standard of review is "whether there is substantial evidence to support the agency's findings."[4] The appellate court's review, moreover, is directed

---

[3]*Capitol Zoning Dist. Comm'n v. Humphrey*, 2018 Ark. App. 311, at 2, 552 S.W.3d 20, 21.

[4]*Id.*

toward the agency rather than the circuit court, "because administrative agencies are better equipped by specialization, insight through experience, and more flexible procedures than courts to determine and analyze legal issues affecting their agencies."[5] This court also

> may reverse or modify an agency decision if the substantial rights of [the appellee] [have] been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
>
> (1) In violation of constitutional or statutory provisions;
>
> (2) In excess of the agency's statutory authority;
>
> (3) Made upon unlawful procedure;
>
> (4) Affected by other error or law;
>
> (5) Not supported by substantial evidence of record;
>
> (6) Arbitrary, capricious, or characterized by abuse of discretion.[6]

"Substantial evidence is valid, legal, and persuasive evidence that a reasonable mind might accept as adequate to support a conclusion and force the mind to pass beyond conjecture."[7] The party challenging the agency decision must prove an absence of substantial evidence and must demonstrate that the proof before the administrative agency was so nearly undisputed that fair-minded persons could not reach the administrative

---

[5]*Id.*

[6]Ark. Code Ann. § 25–15–212(h) (Repl. 2014).

[7]*Humphrey*, 2018 Ark. App. 311, at 2, 552 S.W.3d at 21–22.

7

agency's conclusion.[8] "The question is not whether the evidence would have supported a contrary finding, but whether it supports the finding that was made."[9] This court, in other words, "may not simply substitute its judgment and discretion for that of the administrative agency."[10]

In addition, "administrative action may be viewed as arbitrary and capricious only when it is not supportable on any rational basis."[11] "To have administrative action set aside as arbitrary and capricious, the party challenging the action must prove that it was willful and unreasoning action, without consideration and with a disregard of the facts or circumstances of the case."[12] Indeed, "[a]n action is not arbitrary simply because the reviewing court would act differently," and "once substantial evidence is found, it automatically follows that a decision cannot be classified as unreasonable or arbitrary."[13]

III. *Relevant Statutes*

At the time that the CACD investigated Mitchell in 2004, the act provided that "in every case in which a [child maltreatment] report is determined to be true, [DHS] shall

---

[8] *Smith v. Ark. Dep't of Human Servs.*, 2018 Ark. App. 438, at 2, 559 S.W.3d 291, 293.

[9] *Id.*

[10] *Shaw v. Ark. Dep't of Human Servs.*, 2018 Ark. App. 322, at 6, 550 S.W.3d 925, 929.

[11] *Ark. Contractors Licensing Bd. v. Pegasus Renovation Co.*, 347 Ark. 320, 327, 64 S.W.3d 241, 245 (2001).

[12] *Id.* at 332, 64 S.W.3d at 248 (internal quotation omitted).

[13] *Id.*

notify each subject of the report of the determination."[14] The notification was required to include the investigative determination as well as a statement that "the person named as the offender of the true report may request an administrative hearing."[15] A request for a hearing was timely if it was made within thirty days of the offender's receipt of the notice.[16]

Once requested, a hearing generally had to occur within 180 days.[17] The 180-day limit did not apply, however, when "there [was] an ongoing criminal investigation" or when criminal charges were (or were expected to be) filed "regarding the occurrence that [was] the subject of the child maltreatment report."[18] In those instances, "the administrative hearing [was] stayed pending the final disposition of the criminal proceedings."[19]

Sexual abuse, the form of maltreatment at issue here, included indecent exposure by a person ten years of age or older to a person younger than eighteen years of age.[20] It also included sexual contact "[b]y a . . . caretaker to a person younger than eighteen (18) years of age."[21] "Sexual contact" was defined as "any act of sexual gratification involving the

---

[14]Ark. Code Ann. § 12-12-512(c)(1)(A)(i) (Repl. 2003).

[15]Ark. Code Ann. § 12-12-512(c)(1)(C)(i) & (ii).

[16]Ark. Code Ann. § 12-12-512(c)(1)(C)(iii).

[17]Ark. Code Ann. § 12-12-512(c)(2).

[18]Ark. Code Ann. § 12-12-512(c)(2)(c)(i).

[19]Ark. Code Ann. § 12-12-512(c)(2)(C)(ii).

[20]Ark. Code Ann. § 12-12-503(17)(A)(iii) (Repl. 2003).

[21]Ark. Code Ann. § 12-12-503(17)(C)(i).

touching, directly or through the clothing, of the sex organs, buttocks, or anus of a person or the breast of a female."[22] Moreover, a "caretaker" was "any person ten (10) years of age or older who is entrusted with a child's care" including an agent or employee of a public or private school.[23]

Finally, as indicated above, Mitchell pleaded guilty to two counts of sexual assault in the second degree. A person committed that offense when he or she "[e]ngaged in sexual contact with another person who is less than eighteen (18) years of age and the person was, among other things, "an employee in the minor's school or school district."[24] Like the Child Maltreatment Act, the criminal code defined "sexual contact" as "any act of sexual gratification involving the touching, directly or through the clothing, of the sex organs, buttocks, or anus of a person or breast of a female."[25]

IV. *Discussion*

A. Substantial Evidence

DHS first argues that the ALJ's finding that Mitchell sexually abused J.C. is supported by substantial evidence. DHS contends that "Mitchell's criminal disposition sheet, Mitchell's sex offender assessment, and the CACD interview summaries were valid, legal, and persuasive evidence that reasonable minds would accept as adequate to support a conclusion and force the mind to pass beyond speculation and conjecture." DHS further contends that

---

[22]Ark. Code Ann. § 12-12-503(18)(A).

[23]Ark. Code Ann. § 12-12-503(3).

[24]Ark. Code Ann. § 5-14-125 (Supp. 2003).

[25]Ark. Code Ann. § 5-14-101(9) (Supp. 2003).

10

Mitchell's arguments against considering that evidence, including issue preclusion and statutory immunity for statements made during sex-offender assessments, lack merit. We agree.

The ALJ's true finding regarding J.C. is supported by substantial evidence. As the ALJ found, J.C. told CACD investigators that he and Mitchell touched each other's genitals and masturbated each other to the point of ejaculation. It was also undisputed that J.C. was under eighteen years of age at the time of the contact, and as a teacher at J.C.'s high school, Mitchell met the definition of "caretaker" under the Child Maltreatment Act. Mitchell also admitted during the administrative hearing that one of his two guilty pleas to sexual assault in the second degree regarded his conduct with J.C., and Mitchell admitted the sexual contact with J.C. during his sex-offender assessment in 2010. There was no error, therefore, in the ALJ's true finding of sexual abuse regarding J.C.

Moreover, as we also explain in the companion case that we decide today, we are not persuaded by Mitchell's contention that the ALJ considered inadmissible evidence. During the administrative proceedings, Mitchell argued that the ALJ should not consider his criminal convictions or his admissions during the sex-offender assessment. He argued that the criminal conviction should not have any weight for two reasons. First, because this court rejected it as a basis for a dependency-neglect finding in *Arkansas Department of Health and Human Services v. Mitchell*,[26] and second, for purposes of collateral estoppel, a guilty plea is not the equivalent of a conviction that has been "actually litigated." He also argued that

---

[26]100 Ark. App. 45, 263 S.W.3d 474 (2007).

Arkansas Code Annotated section 12-12-917(b)(4)(B), declaring that "[a] sex offender has immunity for a statement made by him or her in the course of assessment with respect to prior conduct under the immunity provisions of section 16-43-601," barred the ALJ's consideration of his admissions during his 2010 sex-offender assessment. He was mistaken.

First, Mitchell's reliance on our holding in *Mitchell* was misplaced. There, we concluded that Mitchell's guilty pleas to sexually assaulting J.C. and B.T. were insufficient, in and of themselves, to warrant a dependency-neglect finding regarding his own children.[27] We held that there must be additional evidence indicating that Mitchell was a threat to his children (such as a history of assaulting family members) or indicating that his conditions of supervised release prohibited contact with minors.[28] We did not hold, as Mitchell apparently would have it, that his guilty pleas were irrelevant to the determination of whether Mitchell committed child maltreatment regarding the *same victims*. Also, unlike the dependency-neglect case, there was other evidence, including Mitchell's admission during the sex-offender assessment and the minors' statements during the investigation, to support the ALJ's findings.

Secondly, while guilty pleas may not be "adjudications" for purposes of applying collateral estoppel,[29] that doctrine is inapposite here. DHS did not argue, and the ALJ did not find, that Mitchell was barred from relitigating whether he sexually abused J.C. Mitchell

---

[27] *See id.* at 50, 263 S.W.3d at 578.

[28] *Id.*

[29] *See Bradley Ventures, Inc. v. Farm Bureau Mut. Ins. Co.*, 371 Ark. 229, 237, 264 S.W.3d 485, 492 (2007).

still had a hearing and presented defenses. The ALJ, moreover, did not treat the guilty plea as conclusive proof of child maltreatment. Rather, the plea corroborated other evidence, including Mitchell's admission during the sex-offender assessment and J.C.'s statement during the investigation.

Finally, section 12-12-917(b)(4)(B) did not bar the ALJ from considering Mitchell's admission in the sex-offender assessment report, as he claims. By reference to section 16-43-601 and subsequent provisions, that statute provides immunity only from criminal prosecutions[30] and thereby applies only to conduct that has not been prosecuted and not, as here, conduct that ended in two convictions. Accordingly, because the ALJ did not improperly consider Mitchell's guilty plea, and substantial evidence supports the ALJ's finding that Mitchell sexually abused J.C., we affirm.

### B. Due Process

DHS next argues that the untimely notice and hearing did not violate due process. The agency suggests that the constitutional guarantees were not implicated because Mitchell failed to establish that his placement on the Child Maltreatment Registry affected a protected interest. DHS further argues that even if Mitchell had such an interest, it must be weighed against that facts that he ultimately was provided a hearing and the agency's substantial interest in protecting children from maltreatment. While we do not condone DHS's

---

[30] *See, e.g.*, section 16-43-605.

conduct in this matter, we agree that the untimely notice and hearing did not violate due process.[31]

There is no question that Mitchell did not get timely notice of the true finding, and his administrative hearing, after fourteen years, was significantly late. "A failure to meet state regulatory guidelines alone, however, does not establish a violation of . . . due process."[32] Rather, "the constitutional significance of a particular delay must be evaluated in light of the importance of the private interest and the harm to this interest occasioned by the delay; the justification offered by the Government for the delay and its relation to the underlying governmental interest; and the likelihood that the interim decision may have been mistaken."[33] An appellant cannot succeed on a procedural due-process claim, moreover, if state law provides a meaningful postdeprivation remedy for the alleged loss.[34]

On the limited factual circumstances presented in this case, we cannot say that the delay in the postdeprivation hearing violated due process. Mitchell cannot claim that the delay prejudiced the outcome of his criminal proceeding as the administrative hearing would not have occurred until after the final disposition of the criminal proceedings.[35] Mitchell's

---

[31]Mitchell suggests that DHS failed to preserve its due-process arguments by making them below. That argument is without merit for several reasons, including that the alleged due-process violation was argued in the circuit court hearing as well as in the agency's motions for reconsideration following the circuit court's order.

[32]*Pease v. Burns*, 719 F. Supp. 2d 143, 152 (D. Mass. 2010).

[33]*Id.* (*quoting Federal Deposit Ins. Corp. v. Mallen*, 486 U.S. 230, 242 (1988)).

[34]*Mitchell v. Sex Offender Assessment Comm.*, 2020 Ark. App. 261, at 13, 600 S.W.3d at 656.

[35]*See* Ark. Code Ann. § 12-12-512(c)(2)(C)(ii).

guilty plea also would have had the same relevance at an administrative hearing as it did in 2018; therefore, he cannot show that an earlier hearing would have resulted in the removal of his name from the registry. The hearing held in 2018, moreover, was still a meaningful one. Mitchell was able to attack the credibility of the investigation and convince the ALJ that the true finding based on indecent exposure should be reversed. Therefore, because the delayed notice and hearing did not result in a violation of due process for these reasons, we reverse the circuit court's order and affirm the administrative decision.

## C. Unlawful Procedure

DHS last argues that the circuit court should be reversed—and the ALJ affirmed—because Mitchell failed to show that he suffered prejudice as a result of the agency's failure to serve him with notice as required by section 12–12–512(c)(1)(A)(i), or to hold a hearing within the time provided by section 12–12–512(c). In particular, DHS argues that Mitchell ultimately was provided a hearing and considering its split outcome, actually benefited from the delay. DHS is correct.

Courts may reverse or modify the decision of an agency only if the substantial rights of the petitioner are prejudiced by a decision made upon on unlawful procedure,[36] and for the reasons discussed above, Mitchell has not made that showing here.

## V. *Conclusion*

Substantial evidence supports the true finding of sexual abuse regarding J.C. The ALJ did not consider evidence that was inadmissible, and the delayed notice and hearing did not violate due process or prejudice Mitchell's other substantial rights under the circumstances

---

[36] *See* section 12–15–212(h).

15

of this case. Accordingly, we reverse the circuit court's order and affirm the ALJ's true finding of sexual abuse.

Reversed.

GLADWIN and MURPHY, JJ., agree.

*Ellen K. Howard*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellant.

*Steven D. Mitchell*, pro se appellee.